**No. 13-35491**

# United States Court of Appeals for the Ninth Circuit

GORDON B. MORGAN and JEREMY DE LA GARZA,

*Objectors – Appellants*,

ANGELO DENNINGS, *et al.*, on behalf of himself and all others similarly situated;

*Plaintiffs – Appellees*,

— v. —

CLEARWIRE CORPORATION,

*Defendant – Appellee*.

Appeal from United States District Court for the
Western District of Washington, Case No. C10-1859 JLR
The Honorable James L. Robart

## PLAINTIFFS-APPELLEES' MOTION FOR SUMMARY AFFIRMANCE


Clifford A. Cantor
LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074
(425) 868-7813

Jonathan K. Tycko
TYCKO & ZAVAREEI LLP
2000 L St., N.W. Ste. 808
Washington, D.C. 20036
(202) 973-0900

Counsel for Plaintiffs – Appellees
(other Class Counsel listed on signature page)

**Table of Contents**


INTRODUCTION ........................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ............................................1

LEGAL ANALYSIS......................................................................................11

I. Summary Affirmance Is Appropriate in this Context.........................12

II. Standard of Review ..........................................................................12

III. Appellants' Objections Lack Merit....................................................13

A. The Settlement Does Not Include a "Quick Pay" Provision ....13

B. Paying Fees with One Check Is Not "Illegal" ..........................13

C. Multipliers Are Permissible—and There Is No Multiplier Here ....................................................15

D. The District Court's Fee Award Is Reasonable ........................16

E. Appellants' Motives Are Suspect ............................................18

CONCLUSION..........................................................................................20

# **Index of Exhibits**

1. Order (Apr. 22, 2013) [9th Cir., No. 13-35038, Dkt. No. 11] [1]

2. Order Granting Motion for Attorney's Fees and Expenses (May 3, 2013) [W.D. Wash. Dkt. No. 127] [2]

3. Declaration of Cliff Cantor and Jonathan Tycko in Support of Plaintiffs' (i) Motion for Final Approval of Settlement, and (ii) Motion for Attorneys' Fees and Expenses and Service Awards for Representative Plaintiffs (Nov. 8, 2012) [W.D. Wash. Dkt. No. 73]

4. Settlement Agreement and Release of Claims (Aug. 6, 2012) [W.D. Wash. Dkt. No. 61-1]

5. Waiver of Certain Revisionary Rights Under Settlement Agreement and Release of Claims (Nov. 8, 2012) [W.D. Wash. Dkt. No. 68]

6. Declaration of Jennifer M. Keough of the Garden City Group, Inc. Regarding Calculation of Distribution Amount (Mar. 27, 2013) [W.D. Wash. Dkt. No. 122]

7. Cantor Supplemental Declaration in Support of Motions for Final Approval of Settlement and for Fees, Expenses, and Service Awards (Dec. 12, 2012) [W.D. Wash. Dkt. No. 86]

8. Objection to Proposed Class Settlement and Award of Attorneys' Fees and Expenses (Nov. 30, 2012) [W.D. Wash. Dkt. No. 76]

9. Order (Dec. 11, 2012) [W.D. Wash. Dkt. No. 82]

---

[1] All 9th Cir. docket references are to ECF docket entries in *Dennings v. Clearwire Corp.*, No. 13-35038 (9th Cir.) — i.e., Appellants' previous appeal.

[2] All W.D. Wash. docket references are to ECF docket entries in *Dennings v. Clearwire Corp.*, No. C10-1859 JLR (W.D. Wash.).

10. Oral Deposition of Gordon Morgan (taken on December 17, 2012, filed on Dec. 18, 2012) [W.D. Wash. Dkt. No. 97-2]

11. Oral Deposition of Jeremy De La Garza (taken on December 17, 2012, filed on Dec. 18, 2012) [W.D. Wash. Dkt. No. 97-3]

12. Settlement Order and Final Judgment (Dec. 20, 2012) [W.D. Wash. Dkt. No. 99]

13. PACER docket sheet in Case No. C10-1859 (W.D. Wash.)

14. Plaintiffs-Appellees' Motion for Summary Affirmance (Feb. 26, 2013) [9th Cir., No. 13-35038, Dkt. No. 6]

15. Plaintiffs-Appellees' Reply to Appellants Opposition to Plaintiff-Appellees' Motion for Summary Affirmance, and Response to Appellants' Cross-Motion for Sanctions (Mar. 18, 2013) [9th Cir., No. 13-35038, Dkt. No. 10]

16. Order Denying Motion for Contempt (Jun. 3, 2013) [W.D. Wash. Dkt. No. 130]

17. Order (May 24, 2013) [9th Cir., No. 13-35038, Dkt. No. 14]

18. CM/ECF Notices in Case No. 10-CV-01859 (W.D. Wash.) for (i) Notice of Order Denying Motion for Contempt (Jun. 3, 2013) [W.D. Wash. Dkt. No. 130] and (ii) Notice of Appeal (Jun. 3, 2013) [W.D. Wash. Dkt. No. 132]

19. Class Counsel's Motion for Attorneys' Fees and Expenses for Service Awards to Representative Plaintiffs (Nov. 8, 2012) [W.D. Wash. Dkt. No. 71]

20. Supplemental Information in Support of Class Counsel's Renewed Motion for Attorneys' Fees and Expenses (Mar. 27, 2013) [W.D. Wash. Dkt. No. 120]

21. Compendium of Counsel's Declarations in Support of Motion for Attorneys' Fees and Expenses (Nov. 8, 2012) [W.D. Wash. Dkt. No. 74]

22. Supplemental Compendium of Counsel's Declarations in Support of Motion for Attorneys' Fees and Expenses (Mar. 27, 2013) [W.D. Wash. Dkt. No. 124]

23. Appendix to Plaintiffs' Combined Reply in Support of Motions for Final Approval of Settlement and for Fees, Expenses, and Service Awards and Excerpts from Compendium of Court Filings (Dec. 12, 2012) [W.D. Wash. Dkt. Nos. 84, 87]

24. Reply Declaration of Cliff Cantor in Support of Plaintiffs' Motion for Appeal Bond in Connection with Objectors' Second Appeal (with Exhibits A and B) (Jun. 28, 2013) [W.D. Wash. Dkt. Nos. 140, 140-1, 140-2]

## Table of Authorities

### Cases

*Arthur v. Sallie Mae, Inc.*,
No. 10-198, 2012 WL 4076119 (W.D. Wash. Sep. 17, 2012 ......................14

*Bonilla v. Holder*,
317 Fed. Appx. 710 (9th Cir. 2009) ..........................................................12

*Chavez v. Blue Sky Natural Beverage Co.*,
No. 12-16520, slip op. (9th Cir. Dec. 11, 2012)..........................................19

*Clausen v. Icicle Seafoods, Inc.*,
272 P.3d 827 (Wash. 2012) .........................................................................15

*Davern v. Liddiard*,
No. 42657-9, 2013 WL 3021012 (Wash. App. Jun. 14, 2013) ....................12

*Dennings v. Clearwire Corp.*,
No. 10-1859 (W.D. Wash.)............................................................................3

*Devlin v. Scardelletti*,
536 U.S. 1 (2002)...................................................................................1, 11

*Embry v. ACER America Corp.*,
No. 09-1808, 2012 WL 3777163 (N.D. Cal. Aug. 29, 2012).......................19

*Hartless v. Clorox Co.*,
273 F.R.D. 630 (S.D. Cal. 2011) ................................................................15

*Horn v. Carter*,
209 Fed. Appx. 672 (9th Cir. 2006) ..........................................................13

*In re Bank of Amer. Credit Protection Marketing & Sales Practices Litig.*,
No. 11-2269, 2013 WL 174056 (N.D. Cal. Jan. 16, 2013) ..........................14

*In re Bluetooth Headset Prod's Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ....................................................10, 12, 17, 18

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
281 F.R.D. 531 (N.D. Cal. 2012) ...................................................................2

*In re High Sulfur Content Gasoline Prod's Liab. Litig.*,
517 F.3d 220 (5th Cir. 2008) .......................................................................14

*In re Wal-Mart Wage & Hour Employment Practices Litig.*,
No. 06-225, 2010 WL 786513 (D. Nev. Mar. 8, 2010)................................19

*Minnick v. Clearwire U.S. LLC*,
No. 09-912 (W.D. Wash.)..............................................................................3

*Mussmann v. Wal-Mart Stores, Inc.*,
No. LACV-27486 (Dist. Ct., Clinton Cty., Iowa Oct. 13, 2009) ..................20

*Newton v. Clearwire Corp.*,
No. 11-783 (E.D. Cal.) ..................................................................................3

*United States v. Hooton*,
693 F.2d 857 (9th Cir. 1982) .......................................................................12

**Rules**

Ninth Circuit Rule 3-6 ..........................................................................1, 12

**Other Authorities**

Barbara J. Rothstein & Thomas E. Willging,
*Managing Class Action Litigation: A Pocket Guide for Judges*
(Fed. Jud. Ctr. 3rd ed. 2010).......................................................................19

Brian T. Fitzpatrick,
*The End of Objector Blackmail?*, 62 VAND. L. REV. 1623 (2009) ..................2

## INTRODUCTION

Appellants Morgan and De La Garza, who are objectors to the combined settlement of three class actions, previously appealed the district court's denial of their objections. This Court granted summary affirmance under Circuit Rule 3-6 on the ground that "the questions raised in this appeal are so insubstantial as not to require further argument." *See* Ex. 1 (Summary Affirmance Order).

The objectors now appeal a second time—without having raised any new objections. This time, they appeal a district court order awarding attorneys' fees and expenses. *See* Ex. 2 (Fee Order).

Plaintiffs-Appellees respectfully move this Court for summary affirmance once again so this litigation can end. Appellants Morgan and De La Garza have not raised or preserved any objections to the Fee Order other than those that the district court overruled and this Court determined to be meritless.

The scope of Morgan and De La Garza's appeal is limited to their objections. *See Devlin v. Scardelletti*, 536 U.S. 1, 9 (2002) (an objector "will only be allowed to appeal . . . the District Court's decision to disregard his objections."). Since Appellants have not raised and cannot now raise any new grounds to support an appeal, this Court should summarily affirm again.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellants continue to waste the time and resources of this Court, the district

court, and the parties as they engage in what courts and commentators have characterized as "objector blackmail." Fitzpatrick, Brian T., *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623, 1624-25, 1633-41 (2009).

Appellants' counsel, Mr. Bandas, has an uncomplimentary history in this regard that is well documented in case law:

> [A]ttorney Christopher Mr. Bandas, [is] a "professional" or "serial" objector . . . Mr. Bandas routinely represents objectors purporting to challenge class action settlements, and does not do so to effectuate changes to settlements, but does so for his own personal financial gain; he has been excoriated by Courts for this conduct.

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. 531, 533 (N.D. Cal. 2012) (footnote omitted). As he has done in numerous cases,

> Mr. Bandas is . . . improperly attempting to "hijack" the settlement of the Actions from deserving class members . . . solely to coerce ill-gotten, inappropriate, and unspecified "legal fees."

*Id.* at 533 n.4 (citation omitted).

The conduct of "professional" objectors has been summarized as follows:

> [P]rofessional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors. Literally nothing is gained from the cost: Settlements are not restructured and the class, on whose benefit the appeal is purportedly raised, gains nothing.

*Id.* at 533 n.3 (citation omitted).

The underlying settlement resolved three cases filed as class actions,

alleging that Clearwire, *inter alia*, misrepresented its Internet service speed, intentionally slowed customers' speeds, and wrongfully charged early termination fees ("ETFs"). *See* Ex. 2 at 2-3; Ex. 3 at ¶ 16.

The three cases are *Dennings v. Clearwire Corp.*, No. C10-1859 JLR (W.D. Wash.); *Minnick v. Clearwire US, LLC,* No. C09-912 MJP (W.D. Wash.); and *Newton v. Clearwire Corp.*, No. 2:11-cv-783-WBS-DAD (E.D. Cal.) (collectively, the "Actions"). Plaintiffs in the Actions brought their claims under the Washington Consumer Protection Act, several similar state statutes that prohibit unfair or deceptive trade practices, and common law. *See* Ex. 2 at 1 & 3:7-10.

The combined settlement ("Settlement") was the product of months of arm's-length negotiations under the supervision of mediator Edward A. Infante, a respected mediator and former Chief Magistrate Judge of the Northern District of California. *See* Ex. 3 at ¶¶ 30-33. In the face of steep legal hurdles that could have barred any recovery whatsoever, Plaintiffs used their collective bargaining power to negotiate a settlement that provided both significant monetary relief and important programmatic relief for the class. *Id*. at ¶¶ 8, 9, 29-32, 34.

The Settlement provides for payments to class members with speed/quality claims, reimbursement of 50% of past ETF fees, and waiver of ETF fees for at least two years for class members who discontinue their term contracts for reasons related to speed or quality. *See* Ex. 2 at 4-5. In addition, the Settlement requires

enhanced disclosures about Clearwire's network management policies and changes to Clearwire's ETF practices. *Id.*; Ex. 4 at §§ 5.01-02.

When the claims submittal period closed, 83,840 class members had submitted claims. *See* Ex. 2 at 5:12-14; Ex. 6 at ¶ 5. The district court, in its Fee Order, determined that the monetary amount made available to class members under the Settlement was in the tens of millions of dollars, and that the actual monetary amount to be paid/credited to or on behalf of the class totaled $5,276,142.50. Ex. 2 at 6-7. The district court further found that the programmatic relief provided for by the Settlement, while not readily quantifiable, had "real value." Ex. 2 at 7:15-17.

Out of approximately 2.7 million class members, only 409 requested exclusion (representing less than 0.00015 of the class) and only eight filed objections (representing less than 0.000003 of the class). Ex. 2 at 5:6-8; Ex. 7 at ¶¶ 3-4. One of those objections was filed on behalf of Appellants Morgan and De La Garza by their counsel Mr. Bandas. Ex. 8.

Plaintiffs "demonstrated legitimate concerns regarding whether the objections made by Mr. Morgan and Mr. De La Garza were serious and whether their attorney is a so-called 'professional objector,'" causing the district court to allow Plaintiffs to take their depositions. Ex. 9. Plaintiffs took these depositions because Morgan and De La Garza's objections on their face indicated an intent not

to assist the district court in improving the result for the class, but to coerce a payment by preserving their ability to file a meritless appeal.

Specifically, Appellants contended in their objections below that

(1) class counsel committed self-dealing by including in the Settlement a "quick pay" provision—even though the Settlement did not have a "quick pay" provision;

(2) it is "illegal" for a district court to approve a fee award that is to be paid by a single check to one law firm—a theory with no support in Ninth Circuit case law and that runs counter to common practice;

(3) attorneys' fee "multipliers" are not allowed under case law pertaining to federal fee-shifting statutes—even though the Actions did not involve any federal fee-shifting statute; and

(4) the attorneys' fee request was too high—even though any amount that the district court did not award would go directly to the class.

*See* Ex. 8 (objection); Ex. 4 (settlement); Ex. 5 (waiver). Their objection in the district court is signed as "APPELLANTS." Ex. 8 at 5:13.

Morgan and De La Garza, in their depositions, confirmed that their involvement in this case was driven by their serial-objector counsel. Neither Morgan nor De La Garza could demonstrate any understanding of the objection supposedly filed on their behalf. Morgan, for example, had never read anything

relating to the Settlement other than the notice and claim form he submitted and had not even seen "his" objection until the day of his deposition. *See* Ex. 10 at 9:13-10:9, 11:7-14, 17:13-25, 18:21-24. Similarly, De La Garza knew nothing about the Settlement's terms, having glanced only at the header of the email he received from the settlement administrator and reviewed only the claim form he submitted. *See* Ex. 11 at 8:12, 12:7-14, 17:6-12.

Nor could either give any reason that the Settlement was objectionable. To the contrary, when asked, "[D]o you have . . . any objection to the terms of the settlement?," Morgan testified without equivocation, "No." *See* Ex. 10 at 10:17-20. De La Garza stated that he believed the Settlement was objectionable solely because attorneys get paid a lot of money, but admitted that he knew nothing about the attorneys' fees in this case. *See* Ex. 11 at 12:15-16:7.

Following the objectors' depositions, on December 19, 2012 the district court held a fairness hearing. After reviewing all objections, including those concerning attorneys' fees, the district court overruled them and granted final approval to the Settlement. *See* Ex. 12 (order approving settlement). The district court "deferred ruling on class counsel's motion for attorneys' fees and expenses on the ground that the claims filing period was still open and the results of claims processing was a factor that the court could consider in deciding the amount of the award." *See* Ex. 2 at 2:7-10.

Appellants then filed their first notice of appeal on January 18, 2013. *See* Ex. 13. Because the Settlement will not become effective until appellate review has concluded—meaning that during the pendency of any appeals, none of the 80,000+ class members who filed claims will receive any payments—the very threat of an appeal, regardless of its merits, places the objectors in a position to demand a "nuisance payment."

Plaintiff-Appellants moved the Ninth Circuit for summary affirmance of the district court's order approving the Settlement, which this Court granted on April 22, 2013. *See* Ex. 1.

It is assumed that this Court is familiar with the facts and arguments presented in Plaintiffs-Appellees' briefing of their first motion for summary affirmance, which is incorporated by reference here. *See* Exs. 14-15.

Meanwhile, the district court had ordered Appellants to post a Rule 7 bond. *See* Ex. 16 at 1:19-20. Appellants ignored the bond order and petitioned for a rehearing of this Court's summary affirmance. *Id.* at 2:3-4. Plaintiffs moved to hold the objectors in contempt for failing post the bond, *id.* at 2:5-7, at which point the objectors moved to voluntarily dismiss their appeal, *id.* at 2:8-12.[3]

[3] When Appellants moved to dismiss their appeal, this Court had already dismissed it through summary affirmance. As a result, this Court construed Appellants' motion as one to withdraw their petition for rehearing and, so construed, granted it. *See* Ex. 17.

The district court then denied Plaintiffs' motion for contempt, writing: "[T]here is nothing left to argue about since this case has been disposed of entirely." *See* Ex. 16 at 2:15. Yet, just hours later, the objectors filed their second notice of appeal, *see* Ex. 18, this time appealing the district court's Fee Order. *See* Ex. 2. In the Fee Order, the district court awarded class counsel $1,887,792.91 in attorneys' fees, which is less than class counsel's ordinary billings for this contingency fee case.[4] Ex. 2 at 2:17-19, 11:1-3.

The district court held that class counsel were entitled to an award of fees on two grounds under state law.[5] Ex. 2 at 8-9. First, the state consumer protection statutes pursuant to which the Actions were brought expressly authorize fee-shifting. *Id.* Second, the district court found that class counsel "created a substantial benefit for the Settlement Class" and therefore the substantial-benefit doctrine applied. *Id.* at 9.

The district court then determined the appropriate amount of fees to award, reasoning that the lodestar method was most appropriate to apply under the circumstances, and also using the percentage method as a cross-check. Ex. 2 at 10-17. Under both methods, the district court found class counsel's requests for fees

---

[4] As the district court instructed, once the claims submittal period closed, class counsel renewed their motion for attorneys' fees and expenses, to which Appellants never filed any response or opposition. *See* Exs. 19-22 & Ex. 13.

[5] Subject matter jurisdiction in the Actions is based on diversity.

to be reasonable, stating:

> The court has reviewed each law firm's declarations describing what the firm did to advance these Actions and how much time they spent doing it.[6] Based on these declarations and the court's own experience and familiarity with this matter, the court finds and concludes that the number of hours expended by class counsel is reasonable in light of the nature of the Actions, the complexity of the issues involved, and the fact that the Settlement will resolve the three different Actions (with three sets of counsel) that Plaintiffs combined for purposes of settlement to obtain greater negotiating strength and leverage.

Ex. 2 at 11:6-13.

Finally, the District Court applied heightened scrutiny to class counsel's fee request to ensure that there was no evidence of collusion given that the Settlement was reached prior to class certification. Ex. 2 at 17. Concluding that there was none, the district court held as follows:

> (a) class counsel achieved a favorable result for the class by obtaining Clearwire's agreement to certain non-monetary relief and programmatic changes and by making funds available to class members, subject to submission of valid claims by eligible class members;
>
> (b) class counsel devoted substantial effort to pre-and post-filing investigation, legal analysis, and litigation;
>
> (c) class counsel prosecuted the class's claims on a contingent fee basis, investing significant time and accumulating costs with no guarantee that they would receive compensation for their services or recover their expenses;

[6] These declarations can be found at Exhibits 21 and 22.

(d) class counsel employed their knowledge of and experience with class action litigation in achieving a valuable settlement for the class, in spite of Clearwire's possible legal defenses and its experienced and capable counsel;

(e) class counsel have standard contingent fee agreements with the representative plaintiffs, who have reviewed the Settlement and been informed of class counsel's attorneys' fees and expense application and have approved;

(f) the notice informed class members of the amount and nature of class counsel's fee and cost request under the Settlement, class counsel filed and posted their November 8, 2012 fee motion [] in time for class members to make a meaningful decision whether to object to the fee motion, and only four class members objected to the request;

(g) using the lodestar method, which the court concludes is appropriate, the court determines that class counsel's rates and hours are reasonable, and an award of the requested fees would result in a lodestar multiplier of 0.92 or 0.98 . . . , which supports approval of the fee request;

(h) using a percentage-of-the benefit cross-check results in an appropriate percentage . . . under applicable standards; and

(i) there is no indication of collusion or disproportionality of the type that raised concerns in *Bluetooth*.

*See* Ex. 2 at 18-19.[7]

---

[7] The district court likewise granted class counsel's request for expenses, finding that they "were reasonably incurred in light of the work performed, the issues presented, and the results obtained," and were of a type "routinely charged to hourly-paying clients." Ex. 2 at 19-20. Morgan and De La Garza made no objection concerning reimbursement of expenses.

## LEGAL ANALYSIS

The Court should grant summary affirmance because (a) Appellants' only arguments regarding fees were in their objection filed November 30, 2012; (b) the district court overruled that objection; (c) this Court affirmed; (d) Appellants raised no new issues in the district court; and (e) Appellants should not be permitted a second bite at the apple.

Appellants never filed any response to class counsel's renewal of their motion for fees. They have no right to bring a second appeal given that this Court affirmed the district court's order overruling all of their objections (the only basis on which they can appeal), and Appellants raised no new grounds below that would support a second appeal. *See Devlin*, 536 U.S. at 9 (an objector "will only be allowed to appeal . . . the District Court's decision to disregard his objections.").

To the extent this Court may consider entertaining Appellants' second appeal, Appellants are limited to raising only those objections that they raised below relating to the attorneys' fees and costs awarded under the Settlement, which are a subset of the objections this Court has already rejected as "so insubstantial as not to require further argument." *See* Ex. 1. Thus, this Court should again conserve its own resources and those of the district court and parties by summarily affirming the district court's Fee Order and dismissing this appeal.

## I. Summary Affirmance Is Appropriate in this Context

This Court may summarily dispose of an appeal at "*any time* prior to the completion of briefing" when "it is manifest that the questions on which the decision in the appeal depends are so insubstantial as not to justify further proceedings." Ninth Circuit Rule 3-6 (emphasis added); *see also* Ex. 1; *Bonilla v. Holder*, 317 Fed. Appx. 710 (9th Cir. 2009). "Where the outcome of a case is beyond dispute, a motion for summary disposition is of obvious benefit to all concerned." *United States v. Hooton*, 693 F.2d 857, 858 (9th Cir. 1982) (per curiam).

Summary affirmance now, prior to merits briefing, is appropriate because Appellants' objections easily fit within the standard of "so insubstantial as not to require further argument." *See* Ex. 1. This Court has already affirmed the district court's denial of Appellants' objections as non-meritorious. *Id*. And the denial of their objections is the only ground on which Appellants can base an appeal.

## II. Standard of Review

A district court's award of fees to class counsel is reviewed for an abuse of discretion, with findings of fact underlying such an award reviewed for clear error. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 940 (9th Cir. 2011); *Davern v. Liddiard*, No. 42657-9, 2013 WL 3021012, *7 (Wash. App. Jun. 14, 2013) (unpublished; citations omitted) ("We review the reasonableness of a trial

court's award of attorney fees for an abuse of discretion.").

This Court has regularly granted summary affirmance where, like here, the "sole inquiry is whether the district court abused its discretion." *See*, *e.g.*, *Horn v. Carter*, 209 Fed. Appx. 672 (9th Cir. 2006).

## III. Appellants' Objections Lack Merit

Although legitimate objectors play a valuable role in class actions, Appellants' objections provide no such benefit here. Appellants' appeal of the Fee Order is meritless.

### A. The Settlement Does Not Include a "Quick Pay" Provision

Appellants' asserted in their objection that the Settlement includes a quick-pay provision that requires Clearwire to pay class counsel "perhaps as much as two years in advance" of the class. *See* Ex. 8 at 3:24-4:2. But this is likely recycled from a previous objection: There is no quick-pay provision here. No class member or counsel has or will receive payment until after all appeals are resolved. *See* Ex. 4 at §§ 1.02, 2.01, 1.05, 2.03 (Clearwire shall fund the Settlement after "Final Approval," defined as occurring 31 days after judgment if there is no appeal and otherwise at the end of appellate review). The very fact that Appellants made this argument confirms that they barely read the Settlement before objecting.

### B. Paying Fees with One Check Is Not "Illegal"

In their objection, Appellants argued that it is "illegal" for a settlement to

provide that attorneys' fees awarded by a court be paid via check to one law firm for further distribution. *See* Ex. 8 at 4:3-7. Appellants cited only a single case for this proposition, *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220 (5th Cir. 2008), which does not even support their argument. As the district court noted in its Fee Order in this case, Appellants have not pointed to any support in Ninth Circuit law or common practice for this position, nor could the district court find any such support. *See* Ex. 2 at 20:14-17

That the amount awarded will be paid by a single check is not a basis to reverse the Fee Award, and the Fifth Circuit did not reverse on this basis in *High Sulfur*.[8] In this Circuit, fee awards are routinely paid by a single check, with allocations made without the need for court action. *See, e.g.*, *In re Bank of Amer. Credit Prot. Mktg. & Sales Practices Litig.*, No. 11-2269, 2013 WL 174056, *2 (N.D. Cal. Jan. 16, 2013) ("The awarded fees and expenses shall be disbursed to Lead Class Counsel for distribution among Plaintiffs' Counsel."); *Arthur v. Sallie Mae, Inc.*, No. 10-198, 2012 WL 4076119, at *3 (W.D. Wash. Sep. 17, 2012) ("The Court authorizes the Class Counsel firm . . . to allocate the fee award among

[8] *High Sulfur* is easily distinguished as it involved a dispute among counsel where the district court divided a lump sum attorneys' fee award according to Lead Counsel's proposed allocation at an *ex parte* hearing without the benefit of supporting data. *High Sulfur*, 517 F.3d at 223. The district court sealed the individual awards (without a justifying privacy interest), prevented all counsel from communicating about the rewards, required counsel to sign releases, and improperly limited its own scope of review. *Id.* at 223-24, 229-30. Here, there is no allocation dispute. *See* Ex. 3 at ¶ 88.

the Plaintiffs' firms."); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 646 (S.D. Cal. 2011), *aff'd in part*, 473 Fed. Appx. 716 (9th Cir. 2012) ("[F]ederal courts routinely affirm the appropriateness of a single fee award to be allocated among counsel and have recognized that lead counsel are better suited than a trial court to decide the relative contributions of each firm and attorney.").

### C. Multipliers Are Permissible—and There Is No Multiplier Here

Appellants contended that fee multipliers are impermissible, which is irrelevant to the Fee Award for two principal reasons. First, the amount that the district court awarded for fees is *less* than class counsel's ordinary billings, meaning that any multiplier is fractional or negative. In other words, there is no multiplier. Second, Appellants' argument is based on authority involving statutory interpretation of federal fee-shifting statutes, *See* Ex. 8 at 4:16-18, but Plaintiffs did not assert claims under any federal fee-shifting statutes.

To the contrary, the state statutes and common-law principles that Plaintiffs sued under here *do* permit multipliers. *E.g., Clausen v. Icicle Seafoods, Inc.*, 272 P.3d 827, 833 (Wash. 2012) (en banc) ("Once the lodestar has been calculated, the court may adjust the fee to reflect factors not considered yet. The two categories for adjustment are based on whether the fee was contingent on the outcome and the quality of work performed."). Appellants' argument demonstrates again the "form" nature of Appellants' objections and their vexatious involvement.

### D. The District Court's Fee Award Is Reasonable

Finally, Appellants objected to the amount of class counsel's fee request, which the district court granted in the amount of $1,887,792.91 as reasonable attorneys' fees. *See* Ex. 2 at 21. This is less than class counsel's lodestar. *Id*. at 11:1. No matter how reasonable a fee request is, an objector can always argue that it should be lower. But the well-reasoned district court's Fee Order cannot be considered an abuse of discretion.

The Settlement provided for a maximum of $2 million for a combination of attorneys' fees, expenses, and service awards, with any amount remaining that the district court did not award being paid to each eligible class member on a pro rata basis. *See* Ex. 4 at §§ 2.03, 4.02; Ex. 5. This $2 million cap was a "mediator's proposal" made by Judge Infante, who is not known as a purveyor of unfair or collusive settlements. *See* Ex. 2 at 2:15-16; Ex. 7 at ¶ 5.

Class counsel obtained significant monetary and non-monetary relief for the class. *E.g.*, Ex. 4 at §§ 1.03, 5.01-.03; Ex. 5. Counsel then devoted additional time on settlement briefing and Appellants' objection and appeals. *See* Ex. 21-22.

The district court concluded in its discretion that the lodestar approach was the "most appropriate to focus primarily on," as it is often used when a settlement results in significant injunctive relief as this one does. *See* Ex. 2 at 18:3-5. Under this approach, class counsel's fee request is reasonable given that it is less than

class counsel's ordinary billings in this contingent fee case, representing what the district court found to be a fractional or negative multiplier of 0.92. Ex. 2 at 10-11.

Under a percentage cross-check, the district court determined that, in this case, there are two possible denominators to use in determining a percentage: the amount made *available* and the amount to be *paid*. Using only the most easily quantifiable amount made *available* to the class by the Settlement—which the district court found was in the tens of millions of dollars—the fee is "significantly less than the 25% benchmark common-benefit for fee awards." Ex. 2 at 14-15. The district court also found the fee to be reasonable using the amount to be *paid*, of which the fee represents 35.78%. *Id.* at 15-16. Though this is higher than the 25% benchmark, the district court concluded that programmatic changes put into effect by the Settlement for the benefit of the class were "relevant circumstances" that justified this upward deviation. *Id.* at 16.

In their objection, Morgan and De La Garza attempted to liken this case to *Bluetooth*, 654 F.3d 935 (9th Cir. 2011). *See* Ex. 8 at 3:7-8. In *Bluetooth*, the settlement agreement at issue provided the class with "$100,000 in *cy pres* awards and zero dollars for economic injury, while setting aside up to $800,000 for class counsel." *Bluetooth*, 654 F.3d at 938. The Ninth Circuit determined that this "disparity between the value of the class recovery and class counsel's compensation raises at least an inference of unfairness." *Id*.

By contrast, the Settlement here provides the class with access to a substantial sum available through a streamlined claim procedure, plus a substantial sum of waived ETFs *without* a claim procedure, making Appellants' comparison to *Bluetooth* inapt. *See* Ex. 3 at ¶¶ 50, 131; Ex. 7 at ¶ 12. And Appellants ignore the significant non-financial benefits that the Settlement provides, including enhanced disclosures, advertising changes, and ETF policy changes by Clearwire. *See* Ex. 4 at §§ 5.01-.02. Taken together with the litigation history of the case, these factors demonstrate the lack of any collusion by class counsel.

The district court explicitly found "no indication of collusion," reasoning that "[t]he parties' negotiation was strictly at arm's length throughout, guided by a respected mediator;" "[t]here was no hint of trade-off of lesser benefits for the Settlement Class in exchange for greater fees;" and although the Settlement contains what has been described as a "clear sailing" provision, "under the circumstances of this case, the 'clear sailing' feature does not indicate collusion when any amount not awarded will revert directly to the Settlement Class, not to Clearwire." *See* Ex. 2 at 17.

**E. Appellants' Motives Are Suspect**

Appellants' objection relied on factual inaccuracies and misstatements of law. The grounds for their second appeal (as with their first) are easily dismissed as without merit. The Federal Judicial Center advises courts to "[w]atch out . . .

for canned objections from professional objectors," like those here, "who seek out class actions to extract a fee by lodging generic, unhelpful protests." Barbara J. Rothstein & Thomas E. Willging, *Managing Class Action Litigation: A Pocket Guide for Judges* 17 (Fed. Jud. Ctr., 3rd ed. 2010).

A number of cases in which objectors' counsel has objected are identified in Exhibit 23. This exhibit highlights that numerous courts have rejected his objections and criticized the tactics he employs. As just one example,

> [T]he Court finds that the objections are not supported by law or the facts and are indeed meritless. . . . Objectors' counsel have a documented history of filing notices of appeal from orders approving other class action settlements, and thereafter dismissing said appeals when they and their clients were compensated by the settling class or counsel for the settling class.

*In re Wal-Mart Wage & Hour Emp't Practices Litig.*, No. 06-225, 2010 WL 786513, at *1-2 (D. Nev. Mar. 8, 2010).

The objectors' counsel has been reprimanded or sanctioned by many of these courts for improper conduct related to his objections and appeals. And the Ninth Circuit very recently dismissed two appeals filed by Mr. Bandas for failure to file an opening brief. Ex. 24 at ¶ 6 & Ex. B (orders dismissing appeals in *Salvatore Gallucci v. Boiron, Inc.*, No. 12-57184 (9th Cir. **Jun. 3, 2013**) and *Judy Ko v. Alfredo Walsh*, No. 12-17296 (9th Cir. **Apr. 24, 2013**)). And a state court, in a detailed analysis, expressed concern

> that attorney Bandas is seeking to wrongfully use the class action settlement and objection process for personal gain, and without any corresponding benefit to any individual objector or the settlement class as a whole.

*See* Ex. 23 at 25 ¶ 27 (*Mussmann v. Wal-Mart Stores, Inc.*, No. LACV-27486, slip op. (Iowa Dist. Ct., Clinton County, Iowa Oct. 13, 2009). The court thus took judicial notice that Mr. Bandas had previously

> been found by a Florida court ... to be engaging in a conspiracy with his clients and co-counsel to extort money from class members and class counsel, through a similar practice of objecting to the proposed settlement.

*See* Ex. 23 at 19-20. And, he has represented objectors in a staggering number of appeals in the Ninth Circuit alone, the vast majority of which ended with voluntary or involuntary dismissal. *See* Ex. 24.

Appellants' baseless objections below, their deposition testimony, and course of conduct confirm that this appeal is part of a pattern of leveraging delay into unwarranted payments.

**CONCLUSION**

For the reasons stated herein, the Court should grant summary affirmance.

Dated: June 28, 2013 | Respectfully Submitted:

s/ *Cliff Cantor*
One of Counsel for Plaintiffs-Appellees

Other Class Counsel:

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
Cliff Cantor, WSBA # 17893
627 208th Ave. SE
Sammamish, WA 98074
Tel: (425) 868-7813
Fax: (425) 732-3752
cliff.cantor@comcast.net

MILBERG LLP
Lori G. Feldman
One Penn Plaza
New York, NY 10119
Tel: (212) 594-5300
Fax: (212) 868-1229
lfeldman@milberg.com

Counsel for Plaintiffs[9] in *Dennings*

TYCKO & ZAVAREEI LLP
Jonathan K. Tycko
2000 L St., N.W. Ste. 808
Washington, D.C. 20036
Tel: (202) 973-0900
Fax: (202) 973-0950
jtycko@tzlegal.com

PETERSON WAMPOLD
ROSATO LUNA KNOPP
Felix Gavi Luna
1501 Fourth Ave., Ste. 2800
Seattle, WA 98101
Tel: (206) 624-6800
Fax: (206) 682-1415
luna@pypfirm.com

Counsel for Plaintiffs in *Minnick*

AUDET & PARTNERS, LLP
Michael McShane
221 Main St., Ste. 1460
San Francisco, CA 94105
Tel: (415) 568-2555
Fax: (415) 568.2556
mmcshane@audetlaw.com

Counsel for Plaintiffs in *Newton*

[9] In this context, "Plaintiffs" does not include Mr. Robert Prior, who is *pro se*.

## Certificate of Service

I certify that, on June 28, 2013, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit via the CM/ECF system. Participants in the case who are registered users will be served by the appellate CM/ECF system.

For the following participant, who is not known to be registered CM/ECF users, I certify that on the same date I mailed the foregoing by first class mail, postage prepaid:

Mr. Robert Prior
2016 E. 6th St.
Vancouver WA 98661

*s/ Cliff Cantor*, WSBA # 17893